

*U.S. Department of Justice*

*United States Attorney*
*Eastern District of New York*

NMA/LKG/KDE
F.#2017R00242

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

May 16, 2017

<u>By Hand and ECF</u>

The Honorable Allyne R. Ross
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: United States v. Vincent Asaro
     <u>Criminal Docket No. 17-127 (ARR)</u>

Dear Judge Ross:

   The government respectfully submits this letter in opposition to the defendant Vincent Asaro's bail application. In its March 22, 2017 detention memorandum, <u>see</u> Dkt. No. 5 ("Detention Memo"), the government set forth that the defendant is a long-time and powerful member of the Bonanno crime family and a danger to the community. While the defendant has been incarcerated since his arrest, the defendant has demonstrated his continuing threat by, among other things, threatening to murder a prosecutor. As such, there are no combinations of conditions that can reasonably ensure the safety of the community and thus the defendant should be detained pending trial.

I.  <u>Background</u>

   As set forth in the Detention Memo, the defendant is charged with arson conspiracy and arson for directing a Bonanno family associate ("Associate-1") to set fire to a vehicle that had switched lanes in front of Asaro at a traffic light. <u>See</u> Detention Memo at 2-3. The defendant, then aged 77, retaliated against this private citizen by using the power and reach of the Bonanno crime family to obtain the victim's address and have the vehicle burned on a public street. <u>See</u> <u>id.</u> Thus, the charged crime, particularly when viewed in light of the defendant's significant criminal record, long-time membership in the Bonanno crime

family and recent association with members and associates of La Costa Nostra, demonstrate the defendant's propensity for violence.  See id. at 5-9.

II.     The Defendant's Threats While Incarcerated

The defendant's dangerousness and predilection for violence has only intensified while incarcerated on the instant case at the Metropolitan Detention Center ("MDC").  A confidential source ("CS-1") was housed with the defendant at the MDC and certain of his co-defendants.[1]  Over the course of a few days, the defendant told CS-1, among other things, about his prior case that resulted in an acquittal.  See United States v. Asaro, 14-CR-26 (ARR) (E.D.N.Y.).  According to CS-1, the defendant stated that his "rat cousin" showed law enforcement agents where the body of Paul Katz was buried.  The defendant also threatened that, if he ever saw his cousin again, he would kill him.[2]

In addition to threatening his cousin, the defendant also made numerous threats about his prosecutor.  Specifically, according to CS-1, the defendant told one of his co-defendants, who is a Bonanno associate, "We need to do something about this bitch [referring to the prosecutor], and not fuck it up like Vinny.  We need to handle this."  When the Bonanno associate told the defendant that they should talk about it later, the defendant continued to argue for the murder of the prosecutor, saying that for him, even a few years in prison could be a life sentence.[3]  The Bonanno associate stated that "Vinny" was Vincent Basciano, also known as "Vinny from the Bronx."  Basciano, the former acting boss of the Bonanno crime family, is currently serving a life sentence for murder.  See United States v. Basciano, 05-CR-060 (E.D.N.Y.).  During the penalty phase of Basciano's death penalty trial, cooperating witnesses described how Basciano solicited and tried to direct the murder of his federal prosecutor.  See id., Gov't. Mot. Regarding Uncharged Penalty Phase Evidence, Dkt. No. 1200, at 14-19; see id., Penalty Phase Tr., at 8800-8806 (testimony of Joseph Massino).  According to CS-1, on another occasion, the defendant said to the Bonanno associate, "We need to handle this and do something about this bitch [a reference to the prosecutor]."  At that point, the Bonanno associate pulled the defendant aside and they spoke privately.

As set forth above, on at least two occasions since his incarceration, the defendant discussed and planned to have his prosecutor murdered, knowing that he was speaking to loyal Bonanno associates with an incentive to please him and the means to carry

---

[1] CS-1 has been convicted of, among other things, being a felon in possession of a firearm and submission of a false document.

[2] As the Court is aware, in the defendant's prior case, the defendant's cousin testified at trial as a cooperating witness about, among other things, the defendant's admissions regarding his participation in the murder of Paul Katz and the robbery of the Lufthansa Airlines terminal.

[3] The information provided by CS-1 has been corroborated by video recordings and Bureau of Prisons records, among other things.

2

out such a heinous crime. The defendant's words themselves are chilling, suggesting that he and the Bonanno associate "not fuck it up like Vinny," referring to Basciano's failed plot to murder his prosecutor.

These repeated expressions of a desire to murder a federal prosecutor reveal that the defendant poses a tremendous danger—even while in custody. Contrary to defense counsel's claims, the fact that the charged arson is "over five years old" does not mean that he is not dangerous. See Def. Bail App. at 14. Rather, the defendant's recent actions demonstrate that so long as he can communicate with others and express his desire to commit acts of violence against those he determines have slighted him—whether by cutting him off in traffic or prosecuting the case against him—he must be detained. As a long-time and powerful member of the Bonanno crime family, there will always be younger and more physically capable individuals ready, willing and able to act on his orders and ingratiate themselves with the Bonanno crime family. For this reason (and those outlined in the government's Detention Memo), the government respectfully submits that there are no combination of conditions of release that can reasonably assure the safety of the public.

III.     The Defendants' Medical Problems Do Not Mean He Should Be Released

In his bail application, the defendant spends much of his submission detailing his various ailments that he submits require his release. He is mistaken.

First, the defendant's medical condition is not a relevant consideration under 18 U.S.C. § 3142(g) (outlining factors to balance when considering whether to release defendants pending trial). To the contrary, the defendant has amply demonstrated that his advanced age and purported health problems do not diminish his dangerousness. As set forth above, the defendant committed the charged arson at age 77 by simply contacting Associate-1 and directing him to commit an act of violence to exact revenge on a private citizen.[4] The defendant continued that pattern by expressing, in the presence of a Bonanno family associate, his desire to have a federal prosecutor murdered. Simply put, despite the defendant's purported health problems, so long as he can express his violent intentions, the community is at risk.

Second, the defendant's health conditions can be adequately treated by the MDC. In the litany of issues the defendant cites in his bail application, the only medical problems he reports suffering during his recent incarceration are dehydration, high blood pressure and weakness. (See Def. Bail App. at 12.) These symptoms are relatively common conditions that the MDC can adequately address. They are also symptoms that only arose after the defendant was placed in the Special Housing Unit ("SHU")—which occurred while the government investigated the defendant's repeated threats to murder a prosecutor. And when the symptoms arose, the defendant was taken to a hospital, treated and eventually

---

[4] As the government will set forth in its motion pursuant to Federal Rule of Evidence 404(b), Associate-1 performed other crimes at the defendant's direction in an attempt to ingratiate himself with the Bonanno crime family.

3

returned to general population. If the defendant refrains from creating such severe security risks that require his placement in the SHU, then his routine health conditions can be adequately addressed in jail (while still safeguarding the community).

IV. Conclusion

For the foregoing reasons, as well as those outlined in its Detention Memo, the government respectfully submits that the Court should enter a permanent order of detention as to the defendant Vincent Asaro pending trial.

Respectfully submitted,

BRIDGET M. ROHDE
Acting United States Attorney

By:       /s/
Nicole M. Argentieri
Lindsay K. Gerdes
Keith D. Edelman
Assistant U.S. Attorneys
(718) 254-7000

cc: Defense Counsel, Esq. (by ECF)
    Clerk of the Court (ARR) (by ECF)